**E-Filed 2/15/2008**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN SURETY COMPANY, an Indiana corporation and Indiana citizen,<br><br>Plaintiff,<br><br>v.<br><br>JON ZIMMERMAN, an individual and California citizen, ROBINSON & WOOD, a California corporation and DOES 1 through 10, inclusive,<br><br>Defendants. | Case Number C 06-5024<br><br>ORDER[1] GRANTING SUMMARY JUDGMENT<br><br>[re: docket no. 22] |

## I. BACKGROUND

On September 7, 1994, American Surety Company ("ASC") a surety bond business, entered into a bail bond agreement with business partners Alina Castor ("Castor") and Sandra Noble ("Noble"). The bail bond agreement provided that ASC would supply bonds to Castor who in turn would furnish bonds to Noble. The agreement contained an indemnity clause providing expressly that Castor would indemnify ASC for all costs incurred in connection with bail bonds written under the agreement. Additionally, under this provision, Noble was excused

---

[1] This disposition is not designated for publication and may not be cited.

from indemnification.

The parties do not dispute the following facts.[2] In March of 1998, Armando Saldana ("Saldana") filed an action for wrongful apprehension ("the Saldana Action") against ASC, Castor and Noble. In November 2000, Jon Zimmerman ("Zimmerman"), an attorney with the firm of Robinson & Wood, was retained to represent all three defendants. To pay for the litigation costs of the Saldana Action, ASC deducted funds from Castor's "build up fund" ("BUF"). The BUF is an account mandated by the bail bond agreements. Each agent maintains a build up fund with ASC out of which expenses are deducted in the case a bond was forfeited, or litigation arose in association with the bond. The agents also refer to the BUF as their own retirement fund, because they are entitled to its balance upon retiring.

The Saldana Action was resolved in Saldana's favor, settling for $250,000. Following the settlement, ASC brought an action against Castor for indemnification in the Sonoma Superior Court ("the Castor Action"). ASC obtained a judgment against Castor in the amount of $131,903.47.

On August 21, 2006, ASC filed a complaint in this Court against Zimmerman for professional negligence and breach of contract. ASC amended its complaint on October 11, 2006. The First Amended Complaint ("FAC") contains the following allegations. Zimmerman first was contacted by Castor in October 2000. At that time, Castor informed Zimmerman that she was seeking counsel for ASC, Noble and herself. According to the FAC, Castor also informed Zimmerman that, in her opinion, Noble was at fault for the events giving rise to the Saldana Action. During that conversation, Zimmerman took handwritten notes. ASC and Zimmerman entered into a retainer agreement in late October or early November 2000. Zimmerman did not inform ASC of Castor's statement regarding Noble's fault. ASC first learned of Castor's statement in September of 2005 when Zimmerman's handwritten notes were produced in the Castor Action.

---

[2] These facts are summarized in *American Surety Co. v. Castor*, SVC-232841 (Cal. Super. Ct. Sept. 1, 2005).

2

ASC claims that Zimmerman's joint representation of ASC and Noble was wrongful because there was a conflict of interest between the two parties. Based on this allegation, ASC seeks to recover damages based on incomplete recovery in the Castor action as well as the attorney's fees it incurred in both the present action and the Castor action as well as "any other relief the Court deems appropriate." Both parties move for summary judgment. The moving papers directly address ASC's claim for professional negligence but do not make arguments specific to ASC's breach of contract claim. It appears, however, that ASC relies on the same facts and legal theories to support both claims.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

California Rule of Professional Conduct 3-310(c) ("Rule 3-310(c)") provides:

 A member shall not, without the informed written consent of each client:
 (1) Accept representation of more than one client in a manner in which the interests of the clients potentially conflict; or
 (2) Accept or continue representation of more than one client in a matter in

3

      which the interests of the clients actually conflict; or
      (3) Represent a client in a matter and at the same time in a separate matter accept
      as a client a person or entity whose interest in the first mater is adverse to the
      client in the first matter.

Rule 3-310(c) bars both actual and potential conflicts regardless of whether the attorney's intention and motives are honest. *Blecher & Collins v. Northwest Airlines, Inc.*, 854 F. Supp. 1442 (C.D. Cal. 1994). An actual conflict of interest between jointly represented clients "occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." *Id.* at 1451. A potential conflict involves the "possibility of actual conflict arising in the future, resulting from developments that have not yet occurred or facts that have not yet become known." *In Re Jaeger*, 213 B.R. 578, 584 (Bkrtcy. C.D. Ca. 1997).

      Zimmerman argues that he did not breach his duty under Rule 3-310(c) because ASC had full knowledge of the facts surrounding Saldana's apprehension for more than two years before Zimmerman was hired. The trust of this argument is that ASC implicitly waived the alleged conflict. However, under California law, current clients must consent explicitly to conflicted representation; it is counsel's duty to obtain a written waiver. *Blecher & Collins*, 858 F. Supp. at 1455 ("Because obtaining a written waiver requires little effort, informs and protects clients, and avoids costly evidentiary and credibility disputes, the rule is inflexible."); *State Farm Mut. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1435 (Cal. Ct. App. 5th Dist. 1999).

      Zimmerman also contends that he did not breach Rule 3-310(c) because ASC had no reason to assert Noble's conduct as a defense to Saldana's claims. He argues that under the bail bond agreement ASC would not be responsible for the litigation costs, and notes that ASC did not take a position adverse to Noble during the course of the Saldana action. ASC replies that even if these assertions are true, Zimmerman breached his duty because an actual conflict existed at the time of the Saldana Action:

> If Noble was wrongful in arresting Saldana in his underwear, then American Surety had an interest that conflicted with Noble. American Surety could defend on the grounds that it did not authorize Noble to apprehend in such a manner. Clearly, that would create an actual conflict between Noble and American Surety. Mr. Zimmerman never disclosed this conflict to American Surety.

4

ASC'S Motion for Summary Judgment at 4. While Zimmerman is correct that under the terms of the bond agreement, separate defenses may not have had an impact on ASC's ultimate liability, it is undisputed that had ASC retained separate counsel it could have pursued a defense that Zimmerman could not have asserted while simultaneously representing Noble. The circumstances of the Saldana Action thus created an actual conflict. Although ASC's after the fact assertion that it would have pursued a separate defense is speculative, particularly given the contractual relationships among the parties, ASC is not required to show how it would have acted in the absence of the conflict (nor, contrary to Zimmerman's implication, was ASC required to assert its opposing interest by taking a position adverse to Noble).

However, this analysis does not end the present inquiry. As the plaintiff in this action, ASC has the burden of proving a causal relationship between the alleged conflict and actual injury. To recover damages from former counsel for an unfavorable result allegedly caused by a conflict in representing multiple clients, a client must show that, had counsel disclosed the alleged conflict, the result in fact would have been more favorable. *Blecher & Collins*, 858 F. Supp. at 1457. "Mere wistful speculation . . . is insufficient." *Id.*

ASC seeks damages measured by its incomplete recovery in the Castor Action, claiming that the state court's limitation on ASC's recovery "ensued from the failure to disclose and obtain waivers." FAC at ¶ 18. Beyond conclusory statements such as: "Mr. Zimmerman['s] . . . failure to disclose and obtain waiver proximately caused damage to American Surety in it subsequent indemnity suit," *Id.* at ¶ 23, ASC offers virtually no factual support for this assertion.

The state court found that ASC never informed Zimmerman about its financial arrangements with Castor and Noble while the Saldana Action was being litigated and thus concluded that "Mr. Zimmerman would have handled the defense differently had he known Ms. Castor's BUF . . . was the source of funds for the defense." *American Surety Co. v. Castor*, No. SVC-232841 (Super Ct. Sept. 1, 2005). The Court limited ASC's recovery of those costs because it also found that " American Surety Company had legal and equitable obligations to see that Ms. Castor's BUF was spent in a prudent manner. *American Surety Company had an*

5

*obligation to inform retained counsel about the unique relationship of the three parties.*" *Id.* Thus, the state court did not base its decision to reduce ASC's recovery on Zimmerman's conflict of interest. Rather, the court reduced the award because by failing to inform Zimmerman of the source of funding for the Saldana Action, ASC itself bore responsibility for the fact that Zimmerman allowed for such high costs. In light of this determination, ASC cannot show that Zimmerman's failure to obtain a written conflict waiver was the cause of its injury. Accordingly, summary judgment will be granted in favor of Zimmerman.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Zimmerman's motion for summary judgment is GRANTED. The clerk shall enter judgment and close the file.

DATED: February 15, 2008.

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Dominic G. Flamiano  domflam@hotmail.com

Raul v. Aguilar  raulaguilar@aguilarlawoffices.com

Aaron K. McClellan  amcclellan@mpbf.com

Timothy J. Halloran  thalloran@mpbf.com

Christian Penn Foote  cfoote@mpbf.com